**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **MARY JO MCKINLEY, Individually and as Administrator of the Estate of HOWARD MCKINLEY,**<br><br>    **Plaintiff,**<br><br>**vs.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>    **Defendant.** | **CIVIL ACTION NO.**<br><br>5:15-CV-101-MTT |

## COMPLAINT

COMES NOW, Plaintiff Mary Jo McKinley, Individually and as Administrator of the Estate of Howard McKinley, for her Complaint against The United States of America, alleges and states as follows:

## PARTIES, JURISDICTION AND VENUE

### 1.

Mary Jo McKinley is the widow of Howard McKinley.  Mr. and Mrs. McKinley were married April 20, 1968 and remained married until his death on September 21, 2013.  Mrs. McKinley is also the Administrator of the Estate of Howard McKinley.

### 2.

This is an action brought pursuant to the Federal Tort Claims Act.  Mrs. McKinley's claims were timely presented to the Department of Veterans Affairs.  The Department of Veterans Affairs (hereafter "VA") denied Mrs. McKinley's claims by letter dated April 10, 2014.  A copy of that letter is attached as Exhibit "A".  The VA's determination was timely appealed and the Form 95 amended.  The amended claims

were denied on February 10, 2015.   A copy of the letter is attached at Exhibit "B".

Therefore, this action is timely commenced.

3.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1346(b) (Federal

Tort Claims Act) and 28 U.S.C. § 1331 (Federal Question).

4.

The acts and omissions that are the subject of this action occurred at the

Tennessee Valley Healthcare System in Nashville, Tennessee (hereafter "TVHCS").

5.

Mrs. McKinley resides in Bibb County, Georgia.   No real property is involved in

this action.   Therefore, venue in this Court is appropriate pursuant to 28 U.S.C.A. §

1391(b)(1).

**FACTUAL ALLEGATIONS**

6.

Howard McKinley served in the United States Army for three (3) years and was

honorably discharged in 1967.

7.

After his discharge, and because he was a veteran, Mr. McKinley received his

primary medical care through the VA, including TVHCS beginning in September, 2005.

8.

At or around July 2010, Mr. McKinley had an episode of gross hematuria (or

blood in urine) and after an emergency room visit, he followed up at TVHCS on July 29,

2010.   At that time urine cytology showed atypical urothelial cells suspicious for

2

urothelial neoplasm (or cancer).  It was recommended that Mr. McKinley be seen by TVHCS Urology; however an appointment was not available until September 9, 2010.

9.

Mr. McKinley was seen on September 9, 2010 at TVHCS Urology and analysis of his urine showed atypical cells, suspicious for malignancy.  Surgery was recommended, to include bladder biopsy, cytology and ureterograms with possible biopsy.  Although it was suspected that Mr. McKinley had malignant bladder cancer, the surgery was not scheduled until November 15, 2010 and was not performed until November 23, 2010.

10.

On November 23, 2010, Mr. McKinley underwent cystoscopy, bladder biopsy and removal of bladder tumor by surgical resident Dr. Sarah Fraumann, who was supervised by surgeon Dr. Peter Clark.

11.

Pathology of the tumor revealed non-invasive high-grade papillary urothelial carcinoma (cancer) of the left neck of the bladder, with a clinical diagnosis of the same.

12.

After the tumor removal, Mr. McKinley was to be followed every two (2) months with urine cytology and yearly bladder imaging, but no additional treatment was ordered at that time.

13.

However on December 17, 2010, Mr. McKinley's urine cytology was still positive for urothelial carcinoma.  Dr. Sanjay Patel noted that the cytology result suggested that

cancer still remained in Mr. McKinley's bladder.  However, additional biopsy and treatment was not conducted until January 18, 2011.

14.

On January 18, 2011 Mr. McKinley returned to the surgery team at Tennessee Valley VA, and underwent urethral dilation, cystoscopy, and bladder biopsy by surgical resident physicians Drs. Anne Scott and Benjamin Whittam, both supervised by attending surgeon Dr. Peter Clark.  A tumor was discovered at the left bladder neck during the surgery and was removed for biopsy.  As a result of the biopsy, Mr. McKinley was again diagnosed with urothelial carcinoma or cancer.

15.

As a result of the second tumor removal, Mr. McKinley was ordered to receive six (6) induction treatments with Bacillus Calmette-Guerin (BCG), an intravessical chemotherapy injected into the bladder to treat the cancer.  The treatment, however, was not initiated until February 16, 2011 and concluded on March 22, 2011.

16.

On April 28, 2011, Mr. McKinley followed up with surgery resident Dr. Samuel Kaffenberger, who was being supervised by attending Dr. Rodney Davis.  Urine cytology continued to show atypical cells suspicious for cancer.  He then underwent cystoscopy in an office setting, which revealed 3-4 erythematous lesions in the bladder that were concerning for recurrence or persistence of the bladder cancer.  On May 6, 2011, surgical resident Dr. Samuel Kaffenburger, supervised by attending Dr. Davis, recommended that Mr. McKinley undergo cystoscopy in the operating room.  However, no surgery was scheduled.

17.

On June 10, 2011, Mrs. McKinley called the TVHCS and reported to a nurse that they were very concerned because it had been five (5) weeks since they were told Mr. McKinley needed additional surgery and it had not been scheduled.   Mr. McKinley continued to have gross hematuria.

18.

On June 28, 2011, Mr. McKinley underwent cystoscopy in the operating room, with bladder biopsy of two (2) locations, and fulguration of a lesion in the posterior wall of the bladder by surgical resident Dr. Kaffenberger, supervised by attending surgeon Dr. Peter Clark.

19.

Dr. Kaffenberger noted that during this procedure visualization of the entire bladder was not possible, because of the location of the patient's bladder and the need for longer instruments.   The biopsy was again positive for the cancer, showing largely denuded urothelial mucosa with urothelial dysplasia.   At that time, it was recommended that Mr. McKinley undergo another round of BCG chemotherapy.

20.

Although Mr. McKinley continued to have hematuria and atypical cells in his urine, the additional BCG chemotherapy treatment was not initiated until November 8, 2011.   It was concluded November 22, 2011.

21.

On December 20, 2011, a CT scan of Mr. McKinley's abdomen and pelvis was conducted pursuant to an order by urology resident Dr. Catherine Harris, supervised by

attending urologist Dr. Davis.  The CT showed a new bladder mass consistent with the diagnosis of carcinoma.  At that point, there was no evidence of regional or distant metastases of the tumor, but the report indicated that there was edema and inflammatory changes of the bladder.

22.

On January 5, 2012, Mr. McKinley was seen by surgical resident Dr. Cary Stimson, who was supervised by attending urologist Dr. Nicole Miller.  Dr. Stimson noted Mr. McKinley's history of bladder cancer, and also noted that while the recent CT was negative for any metastatic disease, that it was difficult for evaluate for any bladder masses because the bladder was decompressed.   Dr. Stimson and Dr. Miller's evaluation was wrong because the report clearly indicated the presence of a "new" bladder mass.

23.

Routine surveillance cystoscopy was performed in the operating room that same day (January 5, 2012).  Dr. Stimson noted that the "posterior bladder wall found to have what was felt to be either BCG changes versus possibly carcinoma in situ.  The right lateral wall also with what looked like could have been BCG changes versus papillary superficial bladder cancer."  Dr. Stimson ordered that Mr. McKinley be scheduled for additional surgery.

24.

A January 7, 2012 addendum note by resident Dr. Catherine Harris, supervised by Dr. Davis, indicates that interval appearance of Mr. McKinley's bladder mass is consistent with a clinical diagnosis of carcinoma (or cancer).

6

25.

On February 13, 2012, surgical resident Dr. Stimson, supervised by attending Dr. Miller, performed rigid and flexible cystoscopy, possible tumor resection, periurethral dilation, and bladder barbotage.  Dr. Miller's operative findings included fixed high bladder neck, distal urethral narrowing requiring urethral dilation, and no obvious bladder tumors.  A notation in the brief operative note reads ". . . anatomy of bladder neck makes it such that it is impossible to see the dome and posterior portion of the bladder with rigid scope.  This is why we switched to flexible scope for complete cystoscopic evaluation."

26.

Despite the CT scan which was positive for cancer, the January 5, 2012 note by Dr. Stimson that cystoscopy revealed changes to the bladder consistent with cancer, the January 7, 2012 note by Dr. Harris indicating that the bladder mass was consistent with cancer, and Dr. Miller's February 13, 2012 cystoscopy findings that she was unable to see the dome and posterior portion of the bladder, the doctors at TVHCS did nothing to treat the bladder cancer that was clearly present and growing in Mr. McKinley's body.

27.

On February 23, 2012, Mr. McKinley was seen again by resident Dr. Stimson, supervised by Dr. Miller, for gross hematuria (or blood in his urine) and still they prescribed no treatment at that time.

28.

On March 27, 2012, Mr. McKinley was seen again by Dr. Stimson, supervised by Dr. Davis, with continued complaints of gross hematuria and dizziness; Dr. Stimson

noted that he "reassured the patient's wife that his bladder was without suspicious lesions at the recent operative cysto", assuring them that Mr. McKinley no longer had cancer.

29.

On April 28, 2012, Mr. McKinley was seen by his primary care provider at TVHCS, Physicians' Assistant Gary Ungar, with continued complaints of hematuria.

30.

On May 17, 2012, Mr. McKinley was seen by urology resident Dr. Harras Zaid, who was supervised by Dr. Rodney Davis.  He was seen for continued complaints of gross hematuria, passing blood clots while urinating, and painful and frequent urination. Dr. Zaid prescribed Mr. McKinley an antibiotic, believing he had a urinary tract infection. He also inserted a bladder catheter.

31.

On May 31, 2012,  resident Dr. Zaid, supervised by Dr. Davis,  performed routine follow up cystoscopy and noted that the right ureteral orifice could not be visualized due to bullous edema (or swelling) at the site.  No additional treatment was ordered.

32.

On June 12, 2012, Mr. McKinley met with his treating psychologist, Amy Bonitz, and reported that he was no longer concerned that his bladder cancer had returned because he had been assured by the TVHCS Urology team that he simply had a bladder infection.  However, on July 6, 2012, Mr. McKinley complained to Dr. Bonitz that he was still passing bloody urine and that he was relocating to Georgia.

33.

After a move from Tennessee to Georgia, Mr. McKinley sought treatment in Dublin, Georgia at the Carl Vinson VA Medical Center ("Carl Vinson VA") on August 28, 2012.  He was seen by primary care physician Dr. Nazrul Islam, and Dr. Islam noted that Mr. McKinley continued to experience hematuria.

34.

On September 10, 2013, Mr. McKinley's wife called the Carl Vinson VA because Mr. McKinley continued to pass blood in his urine, and he also was having low blood pressure.

35.

On September 13, 2012, Mr. McKinley returned to the primary care clinic and saw Nurse Practitioner Wendy Thornton for continued hematuria.  Nurse Thornton ordered labs, a CT scan of the abdomen and pelvis and instructed Mr. McKinley to keep his already scheduled appointment with non-VA urologist on October 30, 2012.

36.

Lab results from the September 13, 2012 visit showed that Mr. McKinley had critically low hemoglobin and hematocrit levels, and on September 14, 2012, he was admitted to the Carl Vinson VA for treatment of anemia.  The anemia was a result of the large amounts of blood Mr. McKinley had been losing through his urine.

37.

During this hospitalization, a CT scan of the abdomen and pelvis was performed on September 19, 2012, and revealed "Markedly thickened right bladder wall with perivesical fat stranding and irregular shaped soft tissue extending into the pre-vesical

space, worrisome for advanced bladder cancer with perivesical invasion.  There is also abdominal and pelvic lymphadenopathy suggestive of metastatic disease."

38.

As a result of the CT scan, Mr. McKinley was referred to Augusta VA Medical Center on October 1, 2012.

39.

On October 2, 2012, Mr. McKinley underwent surgery for the removal of the previously identified bladder tumor and prostate by urologist Dr. Martha Terris.  The surgery revealed a large necrotic bladder tumor on the right lateral wall.  The right ureteral orifice was also encompassed by tumor.  Pathology revealed malignancy and invasion of the tumor into bladder detrusor muscle.

40.

On October 24, 2012, Mr. McKinley was seen by medical oncologist Dr. Premila Malhotra.  Dr. Malhotra began treatment with chemotherapy and radiation.

41.

Shortly thereafter, Mr. McKinley suffered a seizure.  At that time, it was determined that the cancer had metastized to Mr. McKinley's brain.

42.

On February 8, 2013, Mr. McKinley's chemotherapy and radiation treatment was stopped and his care was changed to hospice for palliative care.

43.

On September 21, 2013, Howard McKinley, after prolonged and painful suffering, died of cancer.

44.

As alleged herein, various personnel at TVHCS were negligent in the care and treatment of Howard McKinley, including but not limited to (a) failing to timely diagnose and treat Mr. McKinley's bladder cancer, (b) failing to timely schedule surgery and treatment to address the cancer, (c) delaying necessary medical treatment, (d) falsifying medical appointments and wait times, resulting in inexcusable delay in care and treatment to Mr. McKinley, (e) failing to meet the appropriate and applicable medical standards of care, and (f) being otherwise negligent.

45.

As a proximate result of the negligence of TVHCS employees and personnel, Howard McKinley was injured, suffered severe physical and mental pain and suffering and eventually died.

46.

As a further proximate result of the negligence of TVHCS employees and personnel, Howard McKinley and his Estate incurred medical, funeral, burial and other expenses.  His medical expenses are in excess of $507,000.00.  His funeral and burial expenses total $1,500.53.

47.

As a further proximate result of the negligence of TVHCS employees and personnel, Mrs. McKinley suffered the loss of her husband's companionship, services, and consortium.

48.

The United States of America is liable for the injuries, death, and damages suffered and incurred as a result of the conduct of its employees and/or agents.

49.

Although not necessary, attached hereto as Exhibit "C" is an affidavit of Marianne Barnhill, M.D. setting forth at least one negligent act or omission claimed to exist and the factual basis for each such claim.

WHEREFORE, Mary Jo McKinley, Individually and as Administrator of the Estate of Howard McKinley prays as follows:

a)    That judgment be entered against Defendant in an amount sufficient to compensate for the special and general damages incurred as the result of Mr. McKinley's injuries and death;

b)    That judgment be entered against Defendant for the full value of Mr. McKinley's life;

c)    That judgment be entered against Defendant in an amount sufficient to compensate for Mrs. McKinley's loss of consortium;

d)    That the costs of this action be taxed against Defendant; and,

e)    That Plaintiff have such other and further relief as the Court deems appropriate under the circumstances.

This 20th day of March, 2015.

/s/Virgil L. Adams_____
Virgil L. Adams
Georgia Bar No. 004625

**[Signatures continued on following page]**

/s/Caroline W. Herrington _____
Caroline W.  Herrington
Georgia Bar No.: 153008


/s/George L. Phillips, Jr._____
George L. Phillips, Jr.
Georgia Bar No.: 230301

ADAMS, JORDAN & HERRINGTON, P.C.
Fickling & Co. Building
577 Mulberry Street, Suite 1250
P.O. Box 928
Macon, GA  31202-0928
(478) 743-2159

**PLEASE SERVE DEFENDANT AS FOLLOWS:**

The United States of America
c/o Michael J. Moore, U.S Attorney
Middle District of Georgia, Macon Division
300 Mulberry Street, Fourth Floor
Macon, Georgia 31201


Eric H. Holder, Jr., Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
Via Certified Mail # 7010 2780 0001 9885 8987
Return Receipt Requested


Juan A. Morales, RN, MSN
Director, Tennessee Valley Healthcare System
1310 24th Avenue South
Nashville, TN 37212-2637
Via Certified Mail # 7010 2780 0001 9885 8994
Return Receipt Requested



**Department of Veterans Affairs**
**Office of Regional Counsel**
**3322 West End Avenue, Suite 509**
**Nashville, TN  37203**
**Phone 615-695-4633**
**Fax 615-695-4634**

April 10, 2014

Virgil L. Adams
Caroline W. Herrington
Adams & Jordan
Fickling & Co. Building
577 Mulberry Street, Suite 1250
P.O. Box 928
Macon, GA 31202-0928                                 <u>CERTIFIED MAIL</u>

     Re:    Administrative Tort Claims of Jo Hollon McKinley and the Estate of
             Howard Carroll McKinley
             GCL No. 4460

Dear Mr. Adams and Ms. Herrington:

This office has completed an investigation of the above-captioned claims under the Federal Tort Claims Act (FTCA), and they are denied. The FTCA provides a legal remedy enabling an individual to recover damages under circumstances where the United States, if it were a private person, would be liable. Our investigation, which included reviews by a urologist and an oncologist who were not involved in Mr. McKinley's care, did not find any negligent or wrongful act or omission on the part of a Department of Veterans Affairs (VA) employee acting within the scope of his or her employment that caused harm regarding the evaluation, treatment, and/or diagnosis of the recurrence of his bladder cancer.

Further action on this matter may be instituted in accordance with the FTCA, sections 1346(b) and 2671-2680, title 28, United States Code (U.S.C.), which provide that a tort claim that is administratively denied may be presented to a federal district court for judicial consideration. Such a suit must be initiated within six months after the date of mailing of this notice of final denial as shown by the date of this letter (section 2401(b), title 28, U.S.C.). If such a suit is filed, the proper party defendant would be the United States, and not the VA. Alternatively, a request for reconsideration of this claim may be filed by: (1) mail to Office of General Counsel (021B), 810 Vermont Avenue, N.W., Washington, DC 20420; (2) fax to (202) 273-6385; or (3) e-mail to OGC.torts@mail.va.gov. VA must receive such a request within six months of the date of mailing of this notice of final denial as shown by the date of this letter. If a request for reconsideration is made, VA shall have six months from receipt of that request during which the option to file suit in an appropriate federal court under 28 U.S.C. 2675(a) is suspended.

**EXHIBIT "A"**

Please note that FTCA claims are governed by a combination of federal and state laws. Some state laws may limit or bar a claim or law suit. VA legal staff handling FTCA claims work for the federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely yours,

Sonya Cromwell
Interim Regional Counsel



**U.S. Department
of Veterans Affairs**

Office of the General Counsel
Washington DC 20420

FEB 1 0 2015

In Reply Refer To:   021B: GCL: 4460

Certified Mail

Caroline W. Herrington, Esq.
Adams, Jordan & Herrington
Fickling & Co. Building
577 Mulberry Street, Suite 1250
P.O. Box 928
Macon, Georgia 31202

Subject:  Administrative Tort Claim of Mary Jo McKinley, Individually, and on behalf of the Estate of Howard Carroll McKinley

Dear Ms. Herrington:

This is in reference to your January 26, 2015 letter following your telephone conversation with attorney Pam Crewe-Allen, indicating that your client had declined the Department of Veterans Affairs (VA) offer of $90,000 to settle this claim under the Federal Tort Claims Act (FTCA).  The claim is therefore denied as not amenable to administrative resolution.

Your client may, in accordance with the FTCA, sections 1346(b) and 2671-2680, title 28, United States Code, file suit in an appropriate Federal district court no later than 6 months after the date of mailing of notice of final denial as shown by the date of this letter.  If your client decides to initiate such a suit, you are further advised that the proper party defendant would be the United States, not VA.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or law suit.  VA attorneys handling FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely yours,

*Kathryn Simpson*
*for*

E. Douglas Bradshaw, Jr.
Assistant General Counsel

**EXHIBIT "B"**

STATE OF LOUISIANA
PARRISH OF NEW ORLEANS

## AFFIDAVIT OF MARIANNE BARNHILL, M.D.

Marianne Barnhill, MD being first duly sworn, deposes and says as follows:

## INTRODUCTION

My name is Marianne Barnhill.  I am over the age of eighteen years and I suffer from no disability which would render me incompetent to make this Affidavit, which I base upon my review of Howard C. McKinley's medical records from Tennessee Valley Healthcare System VA in Nashville, TN, Carl Vinson VA Medical Center in Dublin, GA, Charlie Norwood VA Medical Center in Augusta, GA, and Georgia Cancer Specialists.

Based on my education, training and experience, I am familiar with the standard of care ordinarily exercised by members of the medical profession generally under similar conditions and like surrounding circumstances which are described herein and are reflected Howard McKinley's medical records.

## BACKGROUND, TRAINING, EXPERIENCE AND QUALIFICATIONS

### 1.  Licensure and Education

I am a medical doctor licensed to practice medicine in the State of Louisiana. I was licensed to practice medicine in the State of Louisiana at the time of the events discussed herein, and I remain continuously so licensed at the present time. At the time of the events discussed herein, I was actively practicing medicine in the State of Louisiana.  I have attached to this Affidavit as Exhibit "A" my curriculum vitae.

**EXHIBIT "C"**

I received my medical education from the University of Texas Health Sciences Center in San Antonio, Texas in 1987.  I completed my residency in internal medicine at Washington Hospital Center in Washington, DC in 1990.  I completed my fellowship in hematology and medical oncology at Washington Hospital Center in 1992, and completed an additional year of fellowship training in hematology at LSU Health Sciences Center in Shreveport, Louisiana in 1993. I have been board certified in internal medicine since 1991 and in medical oncology since 2005, and I maintain those certifications through today.

## 2.  Actual Practice Experience with the Conditions and Acts in this Case.

In 2011 and 2012 I had and today I have actual professional knowledge, skill, training, education, and experience in the area of practice and specialty involved in this matter.  Since at least 1993, and including the five years preceding December 2011, I have been regularly engaged in the active practice and teaching of hematology and oncology, including in hospital and clinic settings like the one that Howard McKinley was in at Tennessee Valley Healthcare System VA, with sufficient frequency to establish an appropriate level of knowledge with regard to the appropriate care and treatment of cancer patients.  The actual professional knowledge I have gained by the active practice of hematology and oncology enables me to express an opinion as to whether Drs. Rodney Davis, Nicole Miller, Catherine Harris, Cary Stimson and Harras Zaid met the applicable standard of care in the evaluation, management and treatment of Mr. McKinley.

2

Specifically, for each of the five years preceding December 2011 and extending to the current date, I have evaluated, examined, treated, and supervised the care of oncology patients approximately 85 times per week over that time period.  Also, over this same time period, I have evaluated, examined, treated and supervised the care of patients with symptoms and complaints like those of Howard McKinley approximately 10 times per year.

### 3.  Teaching Experience

In addition to the practical experience referenced above, since 2007, I have been an assistant professor of clinical medicine and clinical associate professor of medicine at Tulane University Health Sciences Center in New Orleans, Louisiana, as well as an associate professor of clinical medicine and clinical instructor of medicine at LSU Health Sciences Center in New Orleans, Louisiana.  I also have additional extensive teaching experience which is outlined in Exhibit A, attached hereto.  All of the institutions at which I have taught are educational institutions and medical schools accredited in the teaching of medical science including oncology and hematology to health professionals.  I have actual professional knowledge and experience in the area of practice and specialty at issue as a result of this regular engagement in teaching others how to evaluate, examine and treat cancer patients like Howard McKinley.

Continuously and regularly since 1993, I have frequently taught others, including physicians, medical students, residents, fellows, and nurses how to evaluate, examine and treat hospital and clinic patients, including patients with symptoms and complaints like those of Howard McKinley which are at issue in this

3

case. My instruction over this time specifically included instruction for evaluation, diagnosis and treatment of bladder and urinary tract cancers.

## RECORDS REVIEWED

### I.     Records from Tennessee Valley Healthcare System VA

1. Around July 2010, Mr. McKinley had an episode of painless hematuria (or blood in urine) and after an emergency room visit, followed up with surgical resident, Dr. Jonathan Humphries who was being supervised by Dr. John Tarpley at Tennessee Valley Healthcare System VA. Subsequent urine cytology showed atypical cells suspicious for malignancy.

2. On November 23, 2010, Mr. McKinley underwent cystoscopy, bladder biopsy and removal of tumor of the bladder by surgical resident Dr. Sarah Fraumann being supervised by surgeon Dr. Peter Clark.

3. Pathology of the tumor revealed non-invasive high-grade papillary urothelial carcinoma of the left neck of the bladder and diagnosis of the same.

4. After the tumor removal, Mr. McKinley was to be followed every 2 months with urine cytology and yearly bladder imaging but no additional treatment was ordered at that time.

5. Due to returning and increased symptoms on January 18, 2011, Mr. McKinley returned to the surgery team at Tennessee Valley VA and underwent uretheral dilation, cystoscopy, and bladder biopsy by surgical residents Anne Scott and Benjamin Whittam, both supervised by

4

attending surgeon Dr. Peter Clark.  As a result of the biopsy, Mr.

McKinley was diagnosed with urothelial carcinoma in-situ.

6.  Mr. McKinley then began receiving induction treatment with BCG into the

bladder which ended in April 2011.

7.  On April 28, 2011, Mr. McKinley followed up with surgery resident Dr.

Samuel Kaffenberger being supervised by attending Dr. Rodney Davis.

Urine cytology showed atypical cells suspicious for papillary urothelial

carcinoma.  He then underwent cystoscopy in the office setting which

revealed 3-4 erythematous lesions in the bladder that were concerning

for recurrence or persistence of the bladder cancer.

8.  On June 28, 2011, Mr. McKinley underwent operating room cystoscopy,

bladder biopsy of 2 locations and fulguration of lesion at the posterior wall

of the bladder by surgical resident Dr. Kaffenberger supervised by

attending surgeon Dr. Peter Clark.  Dr. Kaffenberger noted that during

this procedure visualization of the entire bladder was not possible

because of the location of the patient's bladder and the need for longer

instruments.

9.  The biopsy showed largely denuded urothelial mucosa with urothelial

dysplasia.

10. On October 20, 2011, cystoscopy was repeated by urology resident Dr.

Catherine Harris, supervised by attending urologist Dr. Rodney Davis,

and indicated the presence of benign urothelial and squamous cells and

was not concerning for malignancy at that time.

11. Therefore, Drs. Harris and Davis started Mr. McKinley on maintenance treatment with BCG in November 2011.

12. On December 20, 2011, CT of Mr. McKinley's abdomen and pelvis was conducted pursuant to an order by Dr. Harris. CT showed a new bladder mass consistent with a clinical diagnosis of carcinoma. At that point, there was no evidence of regional or distant metastases. Edema and inflammatory changes were reported in and around the remainder of the bladder.

13. On January 5, 2012, Mr. McKinley was seen by surgical resident Dr. Cary Stimson and supervised by attending urologist Dr. Nicole Miller. Dr. Stimson noted Mr. McKinley's history of bladder cancer and noted that recent CT was negative for any metastatic disease but noted that it was difficult for evaluate for any bladder masses because the bladder was decompressed, even though the CT report clearly indicates a bladder mass was present.

14. Routine surveillance cystoscopy was performed in operating room that day. Dr. Stimson noted that the "posterior bladder wall found to have what was felt to be either BCG changes versus possibly carcinoma in situ. The right lateral wall also with what looked like could have been BCG changes versus papillary superficial bladder cancer." Dr. Stimson ordered that Mr. McKinley be scheduled for additional surgery.

15. On February 13, 2012, surgical resident Dr. Stimson supervised by attending Dr. Miller performed rigid and flexible cystoscopy, possible

tumor resection, periurethral dilation, and bladder barbotage.  Dr. Miller's operative findings included fixed high bladder neck, distal urethral narrowing requiring urethral dilation, and no obvious bladder tumors.  A notation in the brief operative note reads ". . . anatomy of bladder neck makes it such that it is impossible to see the dome and posterior potion of the bladder with rigid scope.  This is why we switched to flexible scope for complete cystoscopic evaluation."

16. On February 23, 2012, Mr. McKinley was seen by resident Dr. Stimson for gross hematuria (or blood in his urine) and Dr. Stimson prescribed no treatment at that time.

17. On March 23, 2012, Mr. McKinley's wife called the Tennessee Valley VA and reported to Nurse James Nestle that Mr. McKinley continued to have gross hematuria, painful urination, and dizziness and requested a call back from the urologist.

18. On April 28, 2012, Mr. McKinley was seen by his primary care provider at Tennessee Valley VA, Physicians' Assistant Gary Ungar and continued to complain of hematuria.

19. On May 17, 2012, Mr. McKinley was seen by urology resident Dr. Harras Zaid, being supervised by Dr. Rodney Davis.  He was seen for complaints of gross hematuria, passing blood clots, painful and frequent urination.  Dr. Zaid prescribed Mr. McKinley an antibiotic believing he had a urinary tract infection and inserted a catheter.

7

20. On May 31, 2012, resident Dr. Zaid, supervised by Dr. Davis, performed routine follow up cystoscopy and noted that the right ureteral orifice could not be visualized due to bullous edema (or swelling) at the site. No additional treatment was ordered.

## II.   Records from Carl Vinson VA Medical Center

1. After a move from Tennessee to Georgia, Mr. McKinley began treating in Dublin, Georgia at the Carl Vinson VA Medical Center on August 28, 2012.

2. On August 28, 2012, he was seen by primary care physician Dr. Nazrul Islam, and Dr. Islam noted that Mr. McKinley continued to experience hematuria.

3. On September 10, 2013, Mr. McKinley's wife called the Carl Vinson VA because Mr. McKinley continued to pass blood in his urine and he was having low blood pressure.

4. On September 13, 2012, Mr. McKinley returned to the primary care clinic and saw Nurse Practitioner Wendy Thornton for continued hematuria. Nurse Thornton ordered labs, a CT scan of the abdomen and pelvis and instructed Mr. McKinley to keep his already scheduled appointment with non-VA urologist on October 30, 2012.

5. Lab results from the September 13, 2012 visit showed that Mr. McKinley had critically low hemoglobin and hematocrit levels and on September 14, 2012, he was admitted to the Carl Vinson VA for treatment of anemia.

6. During the hospitalization, CT scan of the abdomen and pelvis were performed on September 19, 2012 and revealed "Markedly thickened right bladder wall with perivesical fat stranding and irregular shaped soft tissue extending into the pre-vesical space, worrisome for advanced bladder cancer with perivesical invasion.  There is also abdominal and pelvic lymphadenopathy suggestive of metastatic disease."

7. As a result of the CT , Mr. McKinley was referred to Augusta VA Medical Center on October 1, 2012.

**III.    Charlie Norwood Augusta VA Medical Center Records**

1. On October 2, 2012, Mr. McKinley underwent transureteral resection of the previously identified bladder tumor and prostate by urologist Dr. Martha Terris.  Operative findings included the appearance of a large necrotic bladder tumor on the right lateral wall.  The right ureteral orifice was also encompassed by tumor.

2. Pathology of the bladder tumor revealed urothelial (transistional cell) carcinoma, high grade, with invasion of the muscularis propia (detrusor muscle).

**IV.    Other Providers**

1. On October 24, 2012, Mr. McKinley was seen by medical oncologist Dr. Premila Malhotra.  Dr. Malhotra began treatment with chemotherapy and radiation.

2. Shortly thereafter, Mr. McKinley suffered a seizure and was diagnosed with brain metastases.

9

3. On February 8, 2013, Mr. McKinley's chemotherapy and radiation treatment was stopped and his care was changed to hospice/palliative care.

4. On September 21, 2013, Howard McKinley died of cancer.

## OPINIONS

It is my professional opinion, within a reasonable degree of medical certainty and probability, based on the facts set forth herein and the records reviewed, that the physicians at Tennessee Valley Healthcare System VA failed to adhere to the standard of care generally employed in the medical profession under similar or like circumstances. Although the records leave some questions unanswered, and I reserve the right to supplement my conclusions upon the receipt of additional information, it is clear that Drs. Miller, Davis, Harris, Stimson, and Zaid breached the standard of care in at least the following ways:

(1) By failing to diagnose that Mr. McKinley had an occult urinary tract invasive malignancy on or after the abdominal CT result of December 20, 2011;

(2) By failing to order fine needle aspiration of the bladder mass noted on the December 20, 2011 CT result;

(3) By failing to consider a tumor located outside of the view of the cystoscope.

It is my opinion to a reasonable degree of medical certainty and probability that the actions and omissions referenced herein of Drs. Miller, Davis, Harris, Stimson and Zaid caused or contributed to the injuries and death of Howard McKinley.

It is not the purpose of this affidavit necessarily to set forth each and every opinion or criticism I have concerning the care and treatment of Howard McKinley. Nor is it the purpose of this affidavit necessarily to set forth all the consequences of the care or treatment or the lack of care or treatment received by Howard McKinley. Rather, it is only the intention of this affidavit to set forth at least one instance of these practitioners' failure to exercise the appropriate standard of care.

This Affidavit is given solely in connection with the requirements of O.C.G.A. § 9-11-9.1. My affidavit is the product of reliable principles and methods of medicine and I have applied these applicable principles and methods reliably to the information available to me about this matter.

FURTHER AFFIANT SAYTH NOT.

This _30th_ day of _September_, 2013.


_Marianne Barnhill m.D_
**MARIANNE BARNHILL, M.D., Affiant**

Sworn to and subscribed before
me, this _30th_ day of _Sept_, 2013.

_Cyril H. Reisgen II_
Notary Public
My Commission Expires: _on death_

11

# CURRICULUM VITAE

## MARIANNE BARNHILL, M.D.

### PERSONAL INFORMATION:

PLACE OF BIRTH:

Lorain, Ohio USA

HOME ADDRESS:

1537 Calhoun Street
New Orleans, LA  70118
Phone 504-309-2878

BUSINESS ADDRESS:

Tulane University School of Medicine
Department of Medicine - SL 78
1430 Tulane Avenue
New Orleans, LA 70112
Office - (504) 988-5482
Fax    - (504) 988-5483
Email – mabarn@tulane.edu

### ACADEMIC AND PROFESSIONAL APPOINTMENTS:

Assistant Professor of Clinical Medicine
Tulane University Health Sciences Center, New Orleans, LA

Associate Professor of Clinical Medicine
LSU Health Sciences Center, New Orleans, LA

Clinical Associate Professor of Medicine,
Tulane University Health Sciences Center, New Orleans, LA

Clinical Instructor of Medicine,
LSU Health Sciences Center, Shreveport, LA

## ADMINISTRATIVE APPOINTMENTS:

| | |
|---|---|
| 04/2010 - present | Assistant Medical Director of Cancer Center Operations<br>Tulane Cancer Center, New Orleans, LA |
| 04/2010 - present | Chair, Multidisciplinary Lung Cancer Conference<br>Tulane University Health Sciences Center, New Orleans, LA |
| 06/2008 - 01/2009 | Medical Director, LSU Hematology/Oncology Ambulatory Care Services<br>Interim LSU Public Hospital, New Orleans, LA |
| 09/1992 – 09/1993 | Coordinator for Interdisciplinary Studies<br>LSU Health Sciences Center, Shreveport, LA |
| 09/1992 - 09/1993 | Organizer/chair of a CME-approved, weekly multidisciplinary tumor board<br>LSU Health Sciences Center, Shreveport, LA |

## MEDICAL LICENSURE:

| | |
|---|---|
| 07/1992 – present | Louisiana |
| 07/2006 – 12/2008 | Pennsylvania |
| 01/1991 – 12/1994 | District of Columbia |
| 02/1990 – 09/1998 | Maryland |

## SPECIALTY BOARD CERTIFICATION:

| | |
|---|---|
| 2005 | American Board of Internal Medicine, Medical Oncology |
| 2004 | American Board of Internal Medicine, Internal Medicine (recertification) |
| 1991 | American Board of Internal Medicine, Internal Medicine |

## EDUCATION:

| | |
|---|---|
| 01/1980 – 05/1983 | Bachelor of Science (*magna cum laude*); pre-med major<br>University of Texas, San Antonio, TX |
| 07/1983 – 05/1987 | Doctor of Medicine<br>University of Texas Health Sciences Center, San Antonio, TX |

## POST-GRADUATE TRAINING:

| | |
|---|---|
| 07/1987 - 06/1990 | Resident in Internal Medicine<br>Washington Hospital Center, Washington, DC |
| 07/1990 - 06/1992 | Fellow in Hematology and Medical Oncology<br>Washington Hospital Center (Georgetown University affiliate)<br>Washington, DC |
| 09/1992 - 09/1993 | Additional year of fellowship training in Hematology<br>LSU Health Sciences Center, Shreveport, LA |

## CLINICAL POSITIONS:

| | |
|---|---|
| 10/1993 - 12/1999 | Solo private - practice in hematology/oncology, Shreveport, LA |
| 06/1999 - 12/1999 | Medical Director, Hospice Care of Louisiana, Shreveport, LA |
| 01/2000 - 05/2003 | Personal leave to home school daughter |
| 05/2003 - 10/2004 | Solo private - practice in hematology/oncology, Shreveport, LA |
| 11/2004 - 06/2006 | Personal leave to relocate to New Orleans for husband's new employment;<br>job search interrupted by Hurricane Katrina, followed by relocation to<br>Pennsylvania |
| 07/2006 - 05/2007 | Group private - practice in hematology/oncology<br>Geisinger/Fox Chase Cancer Center, Wilkes-Barre, PA |

## CURRENT HOSPITAL APPOINTMENTS:

| | |
|---|---|
| 06/2009 – present | Southeast Louisiana Veterans Health Care System - active staff (part-time) |
| 04/2009 – present | Tulane University Hospitals and Clinics, New Orleans, LA - active staff |
| 08/2007 – present | Interim LSU Public Hospital, New Orleans, LA - active staff |

## HONORS AND AWARDS:

| | |
|---|---|
| 2011 | *New Orleans Super Doctors* |
| 1992 | Kerr Essay Award for outstanding research paper<br>Washington Hospital Center |
| 1983 | *Magna Cum Laude*, University of Texas at San Antonio |
| 1983 | Who's Who Among American Colleges and Universities |

3

**MEDICAL SOCIETY MEMBERSHIP:**

> International Association for the Study of Lung Cancer
> American Society of Hematology
> American Society of Clinical Oncology
> American College of Physicians
> Louisiana State Medical Society

**COMMITTEE APPOINTMENTS:**

| | |
|---|---|
| 2010 | Clinical Cancer Strategic Planning Committee, Tulane Health Sciences Center |
| 2009 | Cancer Committee, Tulane Health Sciences Center |
| 2008 | Cancer Committee, LSU Health Sciences Center, New Orleans, LA |
| 1995 | Quality Assurance Committee, Christus Schumpert Medical Center, Shreveport, LA |
| 1993 | Southwest Oncology Group (SWOG) Breast Committee |
| 1993 | Southwest Oncology Group (SWOG) Lung Committee |
| 1993 | Southwest Oncology Group (SWOG) Cancer Control Research Committee |
| 1993 | Southwest Oncology Group (SWOG) Committee on Women's Health |

**ACADEMIC TEACHING ACTIVITIES:**

| | |
|---|---|
| 2009 - present | Attending, Tulane/VA Inpatient Hematology/Oncology Consult Service Tulane University Hospital - supervision of fellows, residents, and senior medical students  (2 months per year) |
| 2007 - present | Attending, Tulane Inpatient Hematology/Oncology Consult Service Interim LSU Public Hospital - supervision of fellows (2 months per year) |
| 2009 - present | Attending, Southeast Louisiana Veterans Healthcare System Hematology/Oncology Ambulatory Service - supervision of Tulane medicine residents (weekly) |
| 2007- 2009 | Attending, Tulane Hematology/Oncology Ambulatory Service Interim LSU Public Hospital - supervision of Tulane fellows (weekly) |
| 2009 - present | Lecturer, Hematology/Oncology Fellow Core Lecture Series Tulane University Health Sciences Center |
| 2007 - 2009 | Lecturer, Junior Medicine Clerkship LSU Health Sciences Center, New Orleans |
| 2007 - 2009 | Lecturer, Resident Core Lecture Series |

4

| | |
|---|---|
| 06/2008 | LSU Health Sciences Center, New Orleans<br>Lecturer, NCI Summer Student Program<br>LSU Health Sciences Center, New Orleans |
| 2006 - 2008 | Reviewer for the American Board of Internal Medicine<br>sub-specialty examination questions in Medical Oncology |
| 1992 - 1993 | Lecturer, Junior Medicine Clerkship<br>LSU Health Sciences Center, Shreveport, LA |

## MENTORSHIP:

Brian Lewis, M.D., fellow in hematology/oncology, 2010

## INVITED LECTURES:

"Non-Small Cell Lung Cancer Update"
Hematology/Oncology Fellow Core Lecture Series, Tulane University Health Sciences Center
New Orleans, LA – March 11, 2011.

"Lung Cancer: Update"
Section of Pulmonary Medicine, Tulane University Health Sciences Center
New Orleans, LA - June 10, 2010.

"Non-Small Cell Lung Cancer"
Hematology/Oncology Fellow Core Lecture Series, Tulane University Health Sciences Center
New Orleans, LA - March 5, 2010.

"Lung Cancer:  Treatment Advances"
Cancer:  Early Detection and New Treatment Paradigms
Sponsored by Tulane University Health Sciences Center
Ritz-Carlton Hotel, New Orleans, LA - October 24, 2009.

"Lung Cancer:  Case Presentations"
Medicine Grand Rounds
Tulane University Health Sciences Center
New Orleans, LA - September 16, 2009.

"Radon and Lung Cancer"
The Role of the Primary Care Practitioner in the Oncology Team:  Prevention, Screening,
Genomic Treatment, and Counseling
Sponsored by Geisinger Health System and Fox Chase Cancer Center
Eagle Rock Resort, Hazelton, Pennsylvania - October 6 - 7, 2006

## CLINICAL RESEARCH GROUP PARTICIPATION:

10/2010 - present    Medical Oncology Representative to the Gynecologic Oncology Group
                     Tulane Cancer Center, New Orleans, LA

07/2007 – Present    Member, Southwest Oncology Group (SWOG)
                     Member, Eastern Oncology Group (ECOG)
                     Member, National Surgical Adjuvant Breast and Bowel Project (NSABP)

## CURRENT COOPERATIVE GROUP CLINICAL TRIALS:

Site PI for ECOG E1505, A Phase III Randomized Trial of Adjuvant Chemotherapy With or
Without Bevacizumab for Patients With Completely Resected Stage IB-IIIA Non-Small Cell
Lung Cancer.

## GRANTS:

**Barnhill M,** Burton GV.  "Concurrent 5-Fluorouracil Long-term Continuous Infusion and
Interferon alpha-2a in Hormone Refractory Stage D3 Carcinoma of the Prostate."  Research grant
for $15,000 awarded by Schering Laboratories, 1993.

## PUBLICATIONS:

ARTICLES:

Barnhill M, Hess E, Guccion J, Nam L, Bass B, Patterson R. "Tripartite Differentiation in a
Carcinoma of the Duodenum."  Cancer 73:266-72, 1994.

ABSTRACTS:

Sheen MA, Lang-Mims G, Leissinger CA, Kruse-Jarres R, Barnhill M, Blaya M.
"Re-establishing Oncologic Care after a Major Disaster." Proceed ASCO, 2010.

Barnhill M, Malawar M, Priebat D, Shmookler D, Perry D, Gray R, Jelinek J, Schulof R.
"Surgical Impact of a Short Course of Induction Intra-arterial (IA) Cisplatin (CDDP) and
Intravenous Infusion Adriamycin (ADR) for Unresectable High Grade Soft Tissue Sarcomas of

the Extremities (HGSE)." Proceed ASCO 11:416, 1992.

**POSTER PRESENTATIONS:**

Udhrain A, Barnhill M. "A Massive Intra-thoracic Malignant Peripheral Nerve Sheath Tumor." 2010 Southern Regional Meetings, Southern Society for Clinical Investigation, New Orleans, LA, February 25, 2010.

Lewis B, Barnhill M. "Pancreatic Lymphoma." 2010 Southern Regional Meetings, Southern Society for Clinical Investigation, New Orleans, Louisiana, February 25, 2010.

**VOLUNTEER AND COMMUNITY OUTREACH:**

Hospital public relations initiative to promote community outreach, Geisinger/Fox Chase Cancer Center, Wilkes-Barre, PA, 2006 - 2007

Newspaper interview: "Cancer and Nutrition," *Times Leader*, January 2007, Wilkes-Barre, PA

Volunteer medical missionary over-seas service, 1996 - 2003; made seven trips, for a total of fourteen weeks, to remote and under-served areas in Venezuela, Paraguay, Kenya, Tanzania, and mainland China