## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

**MARY JO MCKINLEY, Individually and as Administrator of the Estate of HOWARD MCKINLEY**,

      Plaintiff,

v.

**THE UNITED STATES OF AMERICA**,

      Defendant.

Civil Action No. 5:15-CV-101

### ORDER

This case is before the Court on Defendant's Motion to Dismiss (Doc. 5), Defendant's Motion to Dismiss Plaintiff's First Amended and Recast Complaint (Doc. 13), and Plaintiff's Motion for Extension of Time to File Good Faith Certificate (Doc. 12).  For the reasons discussed herein, Defendant's Motion to Dismiss and Motion to Dismiss Plaintiff's First Amended and Recast Complaint are denied, and Plaintiff's Motion for Extension of Time to File Good Faith Certificate is therefore moot.

## I.    FACTUAL BACKGROUND

This is a negligence action brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1) (2013) and 28 U.S.C. §§ 2671–80 (2000). Plaintiff commenced this action individually and as the administrator of the estate

of her now-deceased husband, Howard McKinley.    Plaintiff is seeking compensation for damages resulting from the death of Mr. McKinley.

Plaintiff alleges that Mr. McKinley died as a result of the negligence of various personnel at the United States Department of Veterans Affairs' ("VA") Tennessee Valley Healthcare System ("TVHCS") in Nashville, Tennessee. Plaintiff has attached to her Complaint the Affidavit of Marianne Barnhill, M.D., who is of the opinion that the physicians at TVHCS failed to adhere to the standard of care generally employed in the medical profession under similar or like circumstances.  Dr. Barnhill is a medical doctor licensed to practice in the State of Louisiana.

Mr. McKinley was first seen at TVHCS on July 29, 2010, after an emergency room visit for an episode of gross hematuria (blood in his urine). Following a diagnosis of bladder cancer, Mr. McKinley underwent a series of tests, operations, and chemotherapy.   His second round of chemotherapy concluded on November 22, 2011, and Mr. McKinley was assured by his physicians at TVHCS that he no longer had bladder cancer.

However, on December 20, 2011, a routine CT scan of Mr. McKinley's abdomen and pelvis showed a "new bladder mass consistent with clinical diagnosis of carcinoma."  Pl.'s First Am. and Recast Compl. ¶ 21.  Following the CT scan, Mr. McKinley underwent a cystoscopy in early January during which his "'posterior bladder wall [was] found to have what was felt to either be BCG changes versus possibly carcinoma in situ.  The right lateral wall also with what

2

looked like could have been BCG changes versus papillary superficial bladder cancer.'"   Pl.'s First Am. and Recast Compl. ¶ 23.   Mr. McKinley underwent a second cystoscopy in early February.   The operative findings noted that there were "'no obvious bladder tumors,'" although "'anatomy of bladder neck makes it such that it is impossible to see the dome and posterior portion of the bladder with rigid scope.'"   Pl.'s First Am. and Recast Compl. ¶ 25.

Despite the concerns raised in these tests and procedures, Plaintiff alleges that the physicians at TVHCS did nothing to treat Mr. McKinley's clearly present and growing bladder cancer, and in fact assured Plaintiff and Mr. McKinley that he no longer had bladder cancer.   Mr. McKinley continued to experience grossly bloody urine.   On May 31, 2012, Mr. McKinley presented for a routine cystoscopy, and doctors noted their inability to visualize the right uretal orifice due to swelling.   Again, Plaintiff alleges that the doctors ignored these symptoms, did nothing to treat Mr. McKinley's bladder cancer, and continued to reassure Plaintiff and Mr. McKinley that Mr. McKinley was cancer-free.

In July 2012, Plaintiff and Mr. McKinley relocated to Bibb County, Georgia. Mr. McKinley visited the Dublin, Georgia VA hospital to establish primary care on August 28, 2012.   During this visit, Mr. McKinley told his physician that his bloody urination persisted.   He was referred to a non-VA urologist, and an appointment was scheduled for October, 2012.   On September 13, 2012, Mr. McKinley returned to the Dublin VA due to continued bloody urination and the onset of low blood pressure.   While hospitalized, Mr. McKinley underwent an abdominal and

3

pelvic CT scan at the direction of a urologist, which revealed findings consistent with advanced bladder cancer and metastatic disease.

Mr. McKinley's diagnosis was confirmed after he underwent tumor removal surgery on October 1, 2012.  A large necrotic tumor was removed, and pathology results revealed malignancy.  Despite aggressive chemotherapy and radiation, Mr. McKinley's cancer worsened, spreading to his brain and eventually killing him on September 21, 2013.  Mr. McKinley died at his home in Georgia.

## II.   PROCEDURAL BACKGROUND

Plaintiff initially presented her claims to the VA for wrongful death, medical expense, pre-death pain and suffering, loss of consortium, and ordinary negligence.  The VA denied her claims initially and on appeal.  Plaintiff filed this lawsuit on March 20, 2015, just over one month after her request for reconsideration was denied.

Defendant has moved the Court to dismiss Plaintiff's Complaint and First Amended and Recast Complaint.  Defendant first argues that Plaintiff's claims should be dismissed because she failed to comply with Tennessee's certificate of good faith requirement for medical malpractice claims, pursuant to Tenn. Code Ann. § 29-26-122(a) (2012), and failed to disclose the number of prior violations of Tenn. Code Ann. § 29-26-122(d)(4).  Defendant also argues that Plaintiff's claims are barred by Tennessee's medical malpractice statute of repose, and therefore should be dismissed.

4

In response, Plaintiff argues that Tennessee substantive law is inapplicable in this case, and therefore compliance with Tennessee's certificate of good faith requirement, violation disclosure requirement, and statute of repose is not required.  In the alternative, Plaintiff argues that Tenn. Code Ann. § 29-26-122 is preempted by the Federal Rules of Civil Procedure and that Tennessee's medical malpractice statute of repose is preempted by the time limitations prescribed by Congress in the FTCA.   Finally, Plaintiff argues that, if Tennessee's statute of repose is relevant, the period was tolled due to concealment on the part of the TVHCS physicians, and therefore the complaint was filed within the prescribed time.

Plaintiff has also filed a Motion for Extension of Time to File Good Faith Certificate and Brief in Support Thereof, which the Court need not consider because Defendant's motions are denied.

## III.   STANDARD OF REVIEW

A motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") tests the facial sufficiency of the complaint.   When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint.   Speaker v. U.S. Dep't of Health and Human Services, 623 F.3d 1371, 1379 (11th Cir. 2010); Columbia Natural Resources, Inc. v. Tatum, 58 F.3d 1101, 1109 (6th Cir. 1995).   The Court is not to decide whether plaintiff will ultimately prevail but rather, whether she is entitled

to offer evidence to support her claims.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–55 (2007).

A motion to dismiss for lack of subject matter jurisdiction, filed pursuant to FRCP 12(b)(1), "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction."  Golden v. Gorno Bros., Inc., 410 F.3d 879, 881 (6th Cir. 2005); see also Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A., 104 F.3d 1256, 1260–61 (11th Cir. 1997).  A factual attack, which Defendant makes in its motions, is "not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction."  United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994); see also Garcia, 104 F.3d at 1261.

## IV.   ANALYSIS

The FTCA is a statutory scheme that removes the sovereign immunity of the United States from suits in tort, with certain specific exceptions.  Richards v. United States, 369 U.S. 1, 6 (1962).  The statute renders the Government liable in the same capacity that an individual would be under like circumstances.  Id. Specifically, the FTCA provides that the United States may be held liable for damages for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).

The statutory scheme was intended to build upon the legal relationships formulated and characterized by the states, rather than to operate with complete independence.  Richards, 369 U.S. at 6–7.  This is clear from the statute's express statement that the law of the state "where the act or omission occurred" controls.  28 U.S.C. §1346(b)(1).

The Court will first examine whether Tennessee or Georgia substantive law applies in evaluating the sufficiency of Plaintiff's allegations.  Next, the Court will examine whether the FTCA's pleading requirements and time limitations preempt state statutes that materially alter the requirements FTCA claimants must meet.

### A.  Tennessee Substantive Law Governs the Rights and Liabilities of the Parties with Respect to All of Plaintiff's Claims.

At this stage of the litigation, a critical issue is whether Georgia or Tennessee substantive law governs the rights and liabilities of the parties in this case.  Particularly relevant are the pleading requirements and statutes of repose for medical malpractice suits in these two states.  Plaintiff argues that a choice of law analysis should control this determination, while Defendant maintains that a choice of law analysis is inapplicable on the facts alleged.

A choice of law analysis is relevant when (1) the events of the case touch more than one state, Richards, 369 U.S. at 9, and (2) a conflict of laws exists between the states that are touched by the events, Dresdner Bank AG v. M/V OLYMPIA VOYAGER, 446 F.3d 1377, 1381 (11th Cir. 2006).  Here, Plaintiff has

established that the events of the case touch both Tennessee and Georgia. Although the alleged negligence of Defendant occurred in Tennessee, Mr. McKinley became aware of his cancer in Georgia, was treated in Georgia, and eventually died in Georgia. The relevant events in this case – the negligent act, impact of the negligent act, treatment, and diagnosis – sufficiently touch both Tennessee and Georgia, such that it is necessary to determine whether a conflict exists between Tennessee and Georgia law with respect to the medical malpractice pleading requirements and statutes of repose.

To succeed in a medical malpractice claim in Tennessee, a plaintiff must establish the following:

> (1) the recognized standard of professional care in the specialty and locality in which the defendant practices; (2) that the defendant failed to act in accordance with the applicable standard of care; and (3) that as a proximate result of the defendant's negligent act or omission, the claimant suffered an injury which otherwise would not have occurred.

Estate of French v. Stratford House, 333 S.W.3d 546, 554–55 (Tenn. 2011). If an expert is hired to establish these facts, Section 29-26-122(a) of the Tennessee Code requires the plaintiff to file a certificate of good faith confirming, among other things, that the plaintiff has conferred with a medical expert who meets the witness competency requirements of Section 29-26-112, and that such expert has reviewed the medical records and believes that a good faith basis exists for maintaining the action. Tenn. Code Ann. § 29-26-122(a). This section of the code further provides that, if the plaintiff fails to file a certificate of good

faith with the complaint, the complaint shall be dismissed . . . ." Id.  Finally, Tennessee requires that the expert whose opinion is relied upon be licensed to practice the relevant specialty in Tennessee or a contiguous bordering state.  Id. at § 29-26-115(b). Tennessee has a three-year statute of repose for medical malpractice actions.  Id. at § 29-26-116(a)(3).

Like Tennessee, Georgia has a merit statute for medical malpractice actions; however, the requirements under Georgia law differ substantially from Tennessee law.  Georgia's medical malpractice merit statute, O.C.G.A. § 9-11-9.1 (2007), requires an affidavit to be filed, along with the complaint, setting forth at least one negligent act or omission claimed to exist and the factual basis for each such claim.  O.C.G.A. § 9-11-9.1(a).  However, unlike the Tennessee statute, the Georgia statute sets forth several exceptions to the requirement that the affidavit be filed contemporaneously with the complaint.  See O.C.G.A. § 9-11-9.1(b).  Plaintiffs who meet the requirements of one of the exceptions have an additional 45 days from the filing of the complaint to satisfy the requirement.  Id. Also unlike Tennessee, Georgia allows any expert "competent to testify" under the circumstances to allege negligence in the affidavit.  See id. at § 9-11-9.1(a). The statute of repose for medical malpractice actions under Georgia law is five years.  Id. at § 9-3-71(b).

An examination of Tennessee and Georgia law governing medical malpractice suits reveals several conflicts of law, necessitating a choice of law analysis.  As described above, the FTCA requires that the "*whole law* of the state

where the act or omission occurred[,]" including its choice of law rules, be applied.  Richards, 369 U.S. at 11 (emphasis added).  Plaintiff and the United States agree that the negligent acts at issue in this case occurred in Tennessee.  See Pl.'s Resp. to Def.'s Mot. to Dismiss at 8; Def.'s Mem. in Supp. of its Mot. to Dism. Pl.'s First Am. and Recast Compl. 5–6.  Thus, the Court must apply Tennessee choice of law rules in determining whether Tennessee substantive law or Georgia substantive law controls in this case.

Tennessee has adopted the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws, including §§ 6, 145, 146, and 175, when a conflict of laws arises.  Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992).  This approach is as follows:

§ 145. The General Principle

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state, which with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
    (a) the place where the injury occurred,
    (b) the place where the conduct causing the injury occurred,
    (c) the domicile, residence, nationality, place of incorporation and place of business of the parties,
    (d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971).  With respect to actions for personal injury or wrongful death, the local law of the state

where the injury occurred is the default law governing the rights and liabilities of the parties.  Id. at §§ 146, 175.

Because Plaintiff contends that this lawsuit is an action under the FTCA for wrongful death, medical malpractice, and ordinary negligence, see Pl.'s Resp. to Def.'s Mot. to Dismiss 1, and a different rule governs choice of law analyses in wrongful death suits, the Court must evaluate the claims separately.

### i.    Action under the FTCA for wrongful death

In an action for wrongful death, the law of the state where the injury occurred controls.  Restatement (Second) of Conflict of Laws § 175.  There is an exception to this default rule when some other state has a more significant relationship to the occurrence and the parties.  Id.  The exception is not applicable on the facts alleged.[1]

The parties disagree about what Mr. McKinley's injury was, and therefore, where the injury occurred.  Plaintiff contends that the injury to Mr. McKinley was both his death and the metastases of his bladder cancer.  Pl.'s Resp. to Def.'s

---

[1] An example of circumstances giving rise to the exception is provided in Comment d to the Restatement (Second) of Conflict of Laws § 146.  The example describes a situation where the plaintiff, a resident of state X, purchases an airline ticket in state X from an airline that is incorporated in state X and has its principal place of business in state X.  The purchased flight departs from one city in state X and lands in another city in state X, but for a short period in flight, flies over state Y.  While over state Y, the pilot commits an act of negligence which causes the plane to lose an engine.  However, the plane is able to safely land at its intended destination.  The plaintiff then seeks damages from the defendant airline for the severe fright and shock resulting from the pilot's negligence.  Under these circumstances, the parties and occurrences are more closely related to state X than they are to state Y, even though the negligence and injury occurred in state Y.

Mot. to Dismiss 11.  It is Plaintiff's position that both of these injuries occurred in Georgia, and that the substantive law of Georgia controls.  Pl.'s Resp. to Def.'s Mot. to Dismiss 10–12.  Defendant does not clearly state what it contends was the injury to Mr. McKinley, but cites the Restatement (Second) of Conflict of Laws § 175, cmt. b, for the proposition that, "the place where the injury occurs for purposes of an action for wrongful death is where the force set in motion by the actor first takes effect on the person, not necessarily where the death occurs nor where the death results in pecuniary loss to the beneficiary."  Def.'s Mem. in Support of its Mot. to Dismiss Pl.'s First Am. and Recast Compl. 5.

The Court is persuaded by Defendant's argument regarding the location of Plaintiff's injury on the theory of wrongful death.  The Restatement specifically states that the location of the injury in a wrongful death suit is where the alleged negligence "first takes effect on the person."  Rest. (Second) of Conflict of Laws § 175, cmt. b.  Here, Plaintiff contends that Defendant was first negligent on December 20, 2011, when a routine CT scan showed a mass in Mr. McKinley's bladder and Mr. McKinley was not told about the mass.  The failure to tell Mr. McKinley about the mass had an immediate effect – he was not told that the mass was "consistent with clinical diagnosis of carcinoma," and therefore was denied the opportunity to choose a course of action while the mass remained inside of his body.  Because the effect of Defendant's alleged negligence was immediate, Mr. McKinley's injury on the theory of wrongful death took place in

Tennessee.  Thus, Tennessee substantive law governs the rights and liabilities of the parties with respect to Plaintiff's claim under the FTCA for wrongful death.

### ii.   Action under the FTCA for medical malpractice and ordinary negligence

On the theories of medical malpractice and ordinary negligence, the Court looks to the general principles outlined in Section 145 of the Restatement (Second) of Conflict of Laws, *supra* pages 10–11.  The Restatement dictates that the substantive law of the state with the most significant relationship to the occurrence and the parties governs.  Section 145 provides some guidance with respect to what should be considered in determining the state with the most significant relationship to the claims.   An analysis of the contacts to be considered persuades the Court that Tennessee substantive law governs the rights and liabilities of the parties with respect to Plaintiff's claims under the FTCA for medical malpractice and ordinary negligence.

### 1.  The place where the injury occurred

First, the Court should consider the place where the alleged injury occurred.  The "first takes effect" principle of Section 175, pertaining to wrongful death claims, is inapplicable on the theories of medical malpractice and ordinary negligence.  This leaves it to the Court to determine the location of the injury when the injury is a latent disease, a question not yet addressed by the Tennessee Supreme Court.

The Sixth Circuit Court of Appeals, applying Tennessee choice of law rules in a medical malpractice action, noted that although the Tennessee Supreme Court has not examined the issue, it has commented in dicta that where the "'injury complained of, and the harmful effect thereof develops gradually over a period of time, the injury is "sustained" . . . when the harmful effect first manifests itself and becomes physically ascertainable.'" <u>Montgomery v, Wyeth</u>, 580 F.3d 455, 460 (6th Cir. 2009) (quoting <u>Teeters v. Curry</u>, 518 S.W.2d 512, 517 (Tenn. 1974)).  Plaintiff cites this language for the proposition that Georgia is the state where Mr. McKinley's injury occurred.  Plaintiff explains that Mr. McKinley's injuries are "two-fold: Howard McKinley's wrongful death and the metastases of his bladder cancer," and that both manifested and became physically ascertainable in Georgia.  Pl.'s Resp. to Def.'s Mot. to Dismiss 11.

Plaintiff's argument regarding the location of Mr. McKinley's injuries is without support.  The court in <u>Montgomery</u> concluded that the place of the injury was Tennessee, not Georgia, when the injured party was receiving the medication that caused her injury in Georgia, but did not claim to suffer any symptoms in Georgia.  580 F.3d at 460–61.  Rather, her symptoms manifested in Tennessee, where she was diagnosed and treated for her injury.  <u>Id.</u>   Mr. McKinley's case is distinguishable from that of the injured party in <u>Montgomery</u>.  Mr. McKinley was experiencing symptoms throughout the time period between Defendant's alleged negligence and Mr. McKinley's move to Georgia.  <u>See</u> Pl.'s Am. Comp. ¶¶ 20–32.  The harmful effect of Defendant's alleged negligence

14

manifested and continued to be physically ascertainable from the moment Defendant failed to disclose Mr. McKinley's diagnosis.

Mr. McKinley's case is also distinguishable from the plaintiff in <u>Teeters</u>. The court in <u>Teeters</u> addressed the date of accrual of a medical malpractice claim resulting from a negligently performed surgical procedure.  The plaintiff in <u>Teeters</u> underwent a bilateral tubal ligation in order to prevent pregnancy.  518 S.W.2d at 512.  The court concluded that the plaintiff's medical malpractice claim accrued and the statute of limitations began to run when she discovered she was pregnant, or in the exercise of reasonable care should have known she was pregnant, as opposed to the day she underwent the negligently performed operation.  <u>Id.</u> at 517.  Unlike the plaintiff in <u>Teeters</u>, who had no symptoms of the negligently performed surgery until her pregnancy, Mr. McKinley's symptoms were occurring and continued to occur both before and after the alleged negligence of Defendant.  Also unlike the plaintiff in <u>Teeters</u>, Mr. McKinley's injury was immediately diagnosable upon examination, as is clear from the medical record.   Mr. McKinley's injury resulted from Defendant's failure to disclose this diagnosis to him.

The place of Mr. McKinley's injury was Tennessee, not Georgia.  Mr. McKinley experienced symptoms of bladder cancer, including blood in his urine, before and after Defendant's alleged negligence, and continued to experience symptoms until his death.  As a result, Mr. McKinley's injury was immediate and continued to worsen after Defendant failed to disclose his diagnosis.  Unlike the

injured parties in the cases cited by Plaintiff, Mr. McKinley's injury was obvious immediately upon the occurrence of Defendant's negligence in Tennessee. Thus, the location of Mr. McKinley's injury is Tennessee.

### 2.  The place where the conduct causing the injury occurred

The parties agree that Tennessee is the place where the conduct causing the injury occurred.  See, *supra*, page 10.  As a result, this consideration also weighs in favor of Tennessee substantive law governing the rights and liabilities of the parties.

### 3.  The domicile of the parties

Consideration of the domicile of the parties favors Georgia substantive law. Plaintiff filed this lawsuit on behalf of herself and as administrator of the estate of Mr. McKinley.  Plaintiff is a resident of Georgia, Mr. McKinley was a resident of Georgia at the time of his death, and all of the heirs of Mr. McKinley reside in Georgia.  Therefore, Plaintiff's domicile is undeniably Georgia.

The United States is a non-domiciliary Defendant, and its domicile is not considered.  Foster v. U.S., 768 F.2d 1278, 1283 (11th Cir. 1985).  When the United States is a defendant, the parties' domicile in applying the "most significant relationship" test should be discounted as a consideration.  Id.  Thus, while consideration of the domicile of the parties favors Georgia substantive law, the Court does not give much weight to this portion of the "most significant relationship" test under the circumstances.

16

### 4. The place where the relationship between the parties is centered

The place where the relationship between the parties is centered is a contact to be considered when (1) a relationship between the parties exists and (2) the injury was caused by an act done in the course of the relationship. Restatement (Second) of Conflict of Laws § 145, cmt. on Subsection (2).  The relevant relationship between the parties is that Plaintiff's husband was the victim of TVHCS's alleged negligence beginning on December 20, 2011 until he moved to Georgia in July 2012.  Any other relationship that Plaintiff has with Defendant, including her citizenship and any pre-suit efforts to resolve this dispute, have no connection to the cause of the injury, and are therefore irrelevant to consideration of this contact.  Thus, consideration of the relationship between the parties indicates that Tennessee substantive law should determine the rights and liabilities of the parties.

An examination of the four factors to be considered in a choice of law analysis, pursuant to § 145 of the Restatement (Second) of Conflict of Laws, clearly favors Tennessee substantive law.  All but one of the four factors weighs in favor of Tennessee.  Further, the one consideration that favors Georgia substantive law should be discounted because of the United States' non-domiciliary nature.  Thus, the Court concludes that Tennessee substantive law governs the rights and liabilities of the parties with respect to Plaintiff's medical malpractice and ordinary negligence claims.

An examination of the relevant choice of law principles leads the Court to conclude that Tennessee substantive law, to the extent it is not preempted by the FTCA, governs the rights and liabilities of the parties in this case as to all of Plaintiff's claims against Defendant.  Plaintiff's wrongful death claim is governed by the substantive law of Tennessee because that is where Defendant's negligence first took effect on Plaintiff.  Plaintiff's medical malpractice and ordinary negligence claims are also governed by Tennessee law, based on the "most significant relationship" approach outlined in the Restatement (Second) of Conflict of Laws § 145.

> **B.    Rules 8, 9, and 11 of the Federal Rules of Civil Procedure Apply to the Exclusion of Section 29-26-122 of the Tennessee Code, in Cases Before the Court Pursuant to the FTCA.**

In her replies to Defendant's Motion to Dismiss and Motion to Dismiss Plaintiff's First Amended and Recast Complaint, Plaintiff contends that, if Tennessee law applies to determine the rights and liabilities of the parties, Section 29-26-122 of the Tennessee Code is preempted by the FRCP.  This section of the Tennessee Code, discussed in detail on pages 8–9 of this Order, requires a plaintiff to file a Certificate of Good Faith contemporaneously with the complaint.  Tenn. Code Ann. § 29-26-122(a).  If a Certificate of Good Faith is not filed with the complaint, a plaintiff's claim is subject to dismissal.  Id.  Defendant's position is that the certificate of good faith requirement is substantive in nature and does not conflict with the federal rules.

It is well established that when a federal court considers a case under the FTCA, the court is to apply state law to substantive questions and federal rules to procedural matters, just as it would if the case were before the court based on diversity jurisdiction.   Williams v. United States, 754 F.Supp.2d 942, 948–49 (W.D. Tenn. 2010) ("Because the FTCA directs federal courts to determine the United States' liability according to state substantive law . . . courts must make the same distinction between procedural and substantive law [as they do when adjudicating claims based on diversity jurisdiction] to determine what law governs."); see also United States v. Yellow Cab Co., 340 U.S. 543, 553 (1951); Young v. United States, 71 F.3d 1238, 1242 (6th Cir. 1995); Stidham v. United States, No. 1:13-CV-1093, 2014 WL 25584, at *2 (N.D. Ga. Jan. 2, 2014).

However, when both a federal rule and a state rule appear to govern an issue before a federal court, that court must first determine whether the federal rule displaces the state rule.  See Shady Grove Orthopedic Associations, P.A. v. Allstate Insurance Co., 559 U.S. 393, 421 (2010) (Stevens, J., concurring in part and concurring in judgment).   The Supreme Court announced a two-step framework the court must follow to address preemption under the circumstances presented in this case.  See id.  First, the court must determine whether the federal rule is sufficiently broad to control the issue before the court.  Id.  If the federal rule *can* operate alongside the state rule, the court should determine whether the state rule is substantive or procedural, pursuant to the doctrine announced in Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).  Id.  If the federal

19

rule cannot operate alongside the state rule, the court must proceed with the second step of the framework – determining whether the federal rule is a valid exercise of the court's authority under the Rules Enabling Act.  Id. at 422.  If the court determines that the federal rule is (1) sufficiently broad to control the issue before the court and (2) a valid exercise of the court's power under the Rules Enabling Act, the federal rule controls to the exclusion of the state rule.  See id. at 421–22.

### i.   FRCP 8, 9, and 11 directly collide with Tenn. Code Ann. § 29-26-122

The Supreme Court recently considered the test for when a federal rule is "'sufficiently broad' to 'control the issue' before the court."  See Shady Grove, 559 U.S. at 421.  At issue in Shady Grove was whether N.Y. Civ. Prac. Law Ann. § 901(b), which precludes a suit to recover a "penalty" from proceeding as a class action, was preempted by FRCP 23.   Id. at 393.   FRCP 23 sets out the prerequisites for a suit to proceed as a class action.  See Fed. R. Civ. P. 23(a). The Supreme Court held that the New York statute directly conflicts with FRCP 23 because it *alters* the right to proceed as a class action, rather than simply having a *practical effect* on that right.  Shady Grove, 559 U.S. at 407–08.  The Supreme Court explained that Rule 23 provides a "one-size-fits-all formula" for determining whether a suit may proceed as a class action.  Id. at 398–99.  Thus, N.Y. Civ. Prac. Law Ann. § 901(b) was preempted by FRCP 23 and did not apply in federal court.  Id.

Similar to Rule 23 in <u>Shady Grove</u>, Rules 8, 9, and 11 of the FRCP provide a "one-size-fits-all formula" for what is required to properly plead a case in federal court.  Rule 8(a) provides:

> (a) Claim for Relief.  A pleading that states a claim for relief must contain:
>
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).  Rule 9 provides exceptions to the pleading requirements of Rule 8, none of which are applicable on the facts alleged in this case.  Fed. R. Civ. P. 9.  Together, Rules 8 and 9 provide a comprehensive scheme of pleading requirements for stating a claim in federal court.   FRCP 11(a) provides that "[u]nless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit."  Fed. R. Civ. P. 11(a).  This Rule is generally interpreted to apply solely to federal enactments.  Benjamin Grossberg, <u>Uniformity, Federalism, and Tort Reform: The Erie Implications of Medical Malpractice Certificate of Merit Statutes</u>, 159 U. Pa. L. Rev. 217, 251–53 (2010). Nowhere in the FRCP are there heightened pleading requirements for medical malpractice cases.   In cases where no heightened pleading requirement is dictated by the FRCP, the Supreme Court has held that the complaint "must satisfy only the simple requirements of Rule 8(a)."  <u>Swierkiewicz v. Sorema N. A.,</u>

534 U.S. 506, 513 (2002).   Under Rule 8(a), there is no requirement that a complaint alleging medical malpractice be accompanied by a certificate or affidavit of merit to survive dismissal.   It would be improper, then, for a state statute imposing a heightened pleading requirement to apply to an FTCA claim.

Although Section 29-26-122 of the Tennessee Code does not appear on its face to impose heightened pleading requirements on medical malpractice plaintiffs, its practical effect is to increase the burden for pleading a medical malpractice claim.   Section 29-26-122 addresses the content requirements for the certificate of merit and dictates that such a certificate must be filed *with the complaint* or the claim will be subject to dismissal by the court.   Tenn. Code Ann. § 29-26-122.   The additional requirements that a medical malpractice plaintiff is required to meet at the pleading stage under Tennessee law effectively impose a heightened pleading requirement, beyond the "simple requirements of Rule 8(a)." This is exactly the kind of conflict between state law and the FRCP that was addressed by the Supreme Court in Shady Grove.   Similar to the New York class action statute, Section 29-26-122 *alters* a plaintiff's right to proceed with a medical malpractice claim in federal court.

While the Sixth Circuit has yet to address the applicability of state affidavit of merit requirements in federal court, Sixth Circuit district courts relying on Shady Grove have held that state merit statutes improperly impose a heightened

pleading requirement on FTCA claimants.[2]  In <u>Thompson</u>, the plaintiff sued the United States pursuant to the FTCA, alleging medical malpractice.  2013 WL 3480347, at *1.  The United Stated moved to dismiss because the plaintiff failed to attach an affidavit of merit to his complaint, as required by Ohio law.  <u>Id.</u>  The United States argued that the Ohio affidavit of merit statute is substantive, and on the principles of <u>Erie</u>, applies to the proceedings.  <u>Id.</u> at *2.  The court first noted that the substantive/procedural distinction of <u>Erie</u> is a "secondary question," and that the court must first address whether there are federal rules that "occupy the field in question."  <u>Id.</u>; <u>see also Shady Grove</u>, 559 U.S. at 421.  The court explained that it was therefore not persuaded by other district court decisions that found the Ohio affidavit of merit statute substantive and applicable in federal court on an <u>Erie</u> analysis.  <u>Id.</u> at *3.  The court cited the Supreme Court's decision in <u>Shady Grove</u> in holding that FRCP 8, 9, and 11 are "'sufficiently broad,' so as to control the issue before [the] [c]ourt and preclude the applicability of the Ohio requirement."  <u>Id.</u> at *2–3, *5.

The same court reached a similar decision in <u>Larca</u>.  The plaintiff in <u>Larca</u> was a former prisoner who brought suit under the FTCA alleging negligent treatment while in prison.  302 F.R.D. at 149.  Again, the United States moved to dismiss because the plaintiff failed to submit an affidavit of merit as required by Ohio law.  <u>Id.</u> at 151.  In denying the United States' motion to dismiss, the court

---

[2] <u>See Larca v. United States</u>, 302 F.R.D. 148 (N.D. Ohio 2014); <u>Thompson v. United States</u>, No. 1:13-CV-00550, 2013 WL 3480347 (N.D. Ohio July 10, 2013); <u>Muncy v. Siefker</u>, No. 3:12cv2301, 2013 WL 1284233 (N.D. Ohio Mar. 26, 2013).

held that FRCP 8 and 9 answered the question of whether the plaintiff's complaint was sufficient, and the Ohio affidavit of merit statute conflicted with the federal rules by adding requirements.  Id. at 159–60.  Again, the court cited Shady Grove in justifying its conclusion.  Id. at 155–56, 159–60.

Eleventh Circuit courts have long held that affidavit of merit statutes are preempted by the FRCP, even prior to the Supreme Court's decision in Shady Grove.  Braddock v. Orlando Reg'l Health Care Sys., Inc., 881 F.Supp. 580, 583–84 (M.D. Fla. 1995) ("where states have created specialized hurdles for filing particular causes of action . . . the Eleventh Circuit has consistently favored the federal rules."); see also Callaway v. O'Connell, 44 F.Supp.3d 1316, 1329 n.7 (M.D. Ga. 2014) ("The Court recognizes the requirement that a plaintiff attach an expert affidavit to his complaint in a professional malpractice action pursuant to [Georgia's statute] does not apply in federal court."); Robinson v. Corr. Med. Assoc., Inc., No. 1:09-cv-01509, 2010 WL 2499994, at *4 (N.D. Ga. June 15, 2010) (holding that Georgia affidavit statute imposes a heightened pleading requirement, and under Hanna v. Plumer, 380 U.S. 460 (1965), is contrary to the FRCP); Roberts v. Jones, 390 F.Supp.2d 1333, 1337 (M.D. Ga. 2005) ("The sufficiency of a plaintiff's complaint is judged by the standard set out in Federal Rule 8(a) which does not require the affidavit of an expert.").

Defendant points out that "the overwhelming majority position within the Sixth Circuit is that affidavit of merit requirements are substantive and not in conflict with federal rules."  Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss 5

24

(citing <u>Bennafield v. U.S.</u>, No. 4:12CV3010, 2013 WL 5173221 (N.D. Ohio Sept. 12, 2013)).  Defendant cites several Sixth Circuit district court cases to bolster this argument.[3]  However, all of the cases cited by Defendant either (1) jump to the <u>Erie</u> analysis of whether a state law is substantive or procedural; (2) conclude that Ohio's affidavit of merit requirement applies in federal court based on the court's holding in <u>Daniel v. United States</u>, 716 F.Supp.2d 694, 698 (N.D. Ohio 2010), which also relied on an <u>Erie</u> analysis; or (3) conduct no analysis at all in concluding that the Ohio affidavit of merit requirement applies in federal court. None of the cases relied on by Defendant cite <u>Shady Grove</u> or "address[] the pre-<u>Erie</u> threshold question—whether a Federal Rule answers the question in dispute such that a conflicting state law cannot apply."   <u>Larca</u>, 302 F.R.D. at 157. Because the courts in these cases did not address whether the FRCP are sufficiently broad so as to control the pleading requirements for plaintiffs alleging medical malpractice, the Court is not persuaded by the contrary results reached.

Upon thorough examination of FRCP 8, 9, and 11, Section 29-26-122 of the Tennessee code, and all applicable case law, the Court agrees with Plaintiff. The FRCP's pleading requirements are sufficiently broad so as to control the

---

[3] <u>Bush v. United States</u>, No. 1:13-cv-406, 2014 WL 661686, at *6 (S.D. Ohio Feb. 19, 2014); <u>Kennedy v. U.S. Veterans Admin.</u>, No. 2:11-cv-150, 2013 WL 5524686 (S.D. Ohio Oct. 4, 2013); <u>Borders v. Lappin</u>, No. 1:11cv1514, 2013 WL 3804858, at *3–6 (N.D. Ohio July 19, 2013); <u>Willis v. U.S. Dep't of Veteran's Affairs</u>, No. 2:12-cv-867, 2013 WL 3155785, at *3–4 (S.D. Ohio June 20, 2013); <u>Smith v. U.S.</u>, No. 2:11-CV-0616, 2011 WL 5101779, at *1 (S.D. Ohio Oct. 26, 2011); <u>Bierbauer v. Manenti</u>, No. 4:09CV2142, 2010 WL 4008835, at *10 (N.D. Ohio Oct. 12, 2010); <u>Landis v. U.S.</u>, No. 2:08-cv-00723, 2009 WL 825407, at *1 (S.D. Ohio Mar. 27, 2009).

question of whether Plaintiff has pled her case sufficiently to survive a motion to dismiss. Because Section 29-26-122's certificate of merit requirement conflicts with Rule 8, the Court must apply the federal rule unless it is invalid under the Rules Enabling Act or the Constitution. Royalty Network, Inc. v. Harris, 756 F.3d 1351, 1360 (11th Cir. 2014). The Court now proceeds to the second prong of the Shady Grove analysis.

### ii.   FRCP 8, 9, and 11 are a valid exercise of the Court's authority under the Rules Enabling Act

In the Rules Enabling Act, Congress authorized the Supreme Court to "promulgate rules of procedure subject to its review, 28 U.S.C. § 2072(a), but with the limitation that those rules 'shall not abridge, enlarge or modify any substantive right,' § 2072(b)." Shady Grove, 559 U.S. at 406–07; see also Hanna, 380 U.S. at 471. The FRCP are presumed to be constitutionally and statutorily valid constraints. Burlington Northern R. Co. v. Woods, 480 U.S. 1, 5 (1987). The court finds nothing here that would undermine these presumptions. Further, none of the parties in this case have challenged Rules 8, 9 or 11 of the FRCP as unconstitutional, and the Court sees no basis for such a challenge. The Court concludes that FRCP 8, 9, and 11 are presumptively valid under the Rules Enabling Act and the Constitution.

The Court holds that (1) the FRCP are sufficiently broad so as to control the pleading requirements for medical malpractice cases in federal court on the

basis of an FTCA claim, and (2) FRCP 8, 9, and 11 are presumptively valid under the Rules Enabling Act and the Constitution.

As a result, Section 29-26-122 of the Tennessee Code is inapplicable to claims in federal court, regardless of whether it is considered a substantive or procedural law.  Plaintiff's failure to comply with Section 29-26-122 does not warrant dismissal of the Complaint because the FRCP displace state law that imposes additional pleading requirements.

### C. Tennessee's Medical Malpractice Statute of Repose is Preempted by the Time Limitations Prescribed by Congress in the FTCA.

Defendant further moves to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction, arguing that the Complaint is barred by Tennessee's three-year statute of repose for medical malpractice actions.  Def.'s Mem. in Supp. of its Mot. to Dismiss 7.  Plaintiff contends that, if Tennessee law is applicable in this case, the Tennessee statute of repose for medical malpractice actions is preempted by the time limitations of the FTCA.  Under Tennessee law, there is a three-year statute of repose for health care liability actions, unless there is fraudulent concealment on the part of the defendant.  Tenn. Code Ann. § 29-26-116(a)(3).  The time limitations prescribed by Congress for FTCA claims directly conflict with Tennessee's three-year statute of repose.

Congress has enacted several statutes governing time limitations in FTCA claims.  Relevant to Plaintiff's claims are 28 U.S.C. §§ 2675(a) and 2401(b).  Under § 2675(a), a plaintiff must first have his claim denied by the appropriate

federal agency before filing the claim in federal court.   28 U.S.C. § 2675(a).

Section 2401(b) states:

> A tort claim against the United States shall be forever barred unless
> it is presented in writing to the appropriate Federal agency within two
> years after such claim accrues or unless action is begun within six
> months after the date of mailing . . . of notice of final denial of the
> claim.

28 U.S.C. § 2401(b).  The FTCA's time limitations in § 2401(b) and § 2675(a) are

tolled by the filing of a reconsideration claim within six months after "final denial"

by the appropriate agency.  28 C.F.R. § 14.9(b).  Tolling allows a claimant to wait

until a final agency decision is made, "'thereby increasing the chances of

administrative resolution and decreasing the burden on the federal courts.'"  Blau

v. United States, No. 8:12-cv-2669-T-26AEP, 2013 WL 704762, at *2 (M.D. Fla.

Feb. 26, 2013) (quoting Mack v. United States, 414 F.Supp. 504, 508 (E.D. Mich.

1976).

As Plaintiff explains in her Response to Defendant's Motion to Dismiss,

this leaves only two time-has-lapsed scenarios that will bar a plaintiff's cause of

action under the FTCA: (1) where the claimant does not present his claim to the

appropriate federal agency within two years from the claim's accrual; or (2)

where the claimant fails to bring a cause of action within six months of final denial

of the claim by the federal agency.   See 28 U.S.C. §§ 1675(a), 2401(b); 28

C.F.R. § 14.9(b).

Plaintiff filed her administrative claim with the VA on October 4, 2013. Assuming that Plaintiff's claim accrued on December 20, 2011,[4] Plaintiff's administrative action was timely filed within two years, in compliance with § 2401(b).  Plaintiff's claim was not denied by the VA until April 10, 2014.  Plaintiff then timely filed a request for reconsideration with the VA on September 8, 2014. This request for reconsideration was not denied until February 10, 2015, after the expiration of Tennessee's three-year statute of repose.  Plaintiff filed this action on March 20, 2015, after exhausting her administrative remedies.  March 20, 2015 is within the six-month window provided for in § 2401(b).

Defendant acknowledges that Plaintiff was required to first file an administrative claim with the appropriate federal agency prior to instituting a claim in federal court.  Def.'s Rep. to Pl.'s Resp. to Def.'s Mot. to Dismiss 8. However, Defendant contends that Plaintiff should have filed this action after the initial denial of her claim by the VA, April 10, 2014, but before the date that Defendant contends the statute of repose expired, December 20, 2014.  Id. at 8– 9.  Defendant argues that Plaintiff's failure to file the instant action before December 20, 2014 was a violation of Tennessee's statute of repose for medical malpractice claims, and therefore warrants dismissal of the Complaint.  This argument would defeat the purpose of the tolling provision provided for in 28 C.F.R. § 14.9(b), which allows a claimant to wait until the agency has reached a final resolution of the claim.

---

[4] The date of Defendant's first alleged act of negligence.

The Court must address whether Tennessee's statute of repose is preempted under the circumstances of this case—where the plaintiff follows the time constraints of the FTCA, but the state statute of repose would bar the action. There are three categories of preemption: (1) express preemption; (2) field preemption; and (3) conflict preemption. <u>Florida State Conference of N.A.A.C.P. v. Browning</u>, 522 F.3d 1153, 1167 (11th Cir. 2008). Field and conflict preemption are together considered "implied preemption." <u>Id.</u> (citing <u>Gade v. Nat'l Solid Wastes Mgmt. Ass'n</u>, 505 U.S. 88, 98 (1992)). Express preemption occurs when "Congress manifests its intent to displace a state law using the text of a federal statute." <u>Id.</u> Field preemption occurs when a "congressional legislative scheme is 'so pervasive as to make the reasonable inference that Congress left no room for the states to supplement it.'" <u>Id.</u> (citing <u>Rice v. Santa Fe Elevator Corp.</u>, 331 U.S. 218, 230 (1947)). Conflict preemption occurs when it is "physically impossible to comply with both the federal and the state laws or when the state law stands as an obstacle to the objective of the federal law." <u>Id.</u>

Courts confronted with the issue facing this Court have reached conflicting results. Plaintiff urges the Court to adopt the reasoning of two other district courts that found that the time limitations prescribed by the FTCA preempted state statutes of repose. In <u>Blau</u>, the Middle District of Florida held that Florida's four-year statute of repose was preempted by the FTCA. <u>Blau</u>, 2013 WL 704762, at *1. The court provided three main reasons for its decision. First, the court noted that the tolling provision of the FTCA allows claimants to wait for a

30

final agency decision, thereby increasing chances of administrative resolution and decreasing the burden on federal courts.  Blau, 2013 WL 704762, at *2. Allowing state statutes of repose to supersede the FTCA's time limitations would defeat Congress's attempt to encourage administrative resolution.  Id.  Second, the FTCA's time limitations are couched in terms of accrual, indicating Congress's intent to occupy the field of statutes of limitations and repose.  Id. at *3.  Finally, the court explained that if state statutes of repose were applicable in FTCA claims, each state would be permitted to define the federal courts' subject matter jurisdiction.  Id. at *3.  The court dismissed cases that found otherwise, explaining that those cases either did not consider federal preemption or were factually distinguishable from the facts presented in Blau.  Id. at *3.  The court held that state statutes of repose are preempted by the FTCA.

The Middle District of Tennessee took a similar position in Jones v. United States, 789 F.Supp.2d 883 (M.D. Tenn. 2011).  In that case, Tennessee's three-year statute of repose was at issue.  Jones, 789 F. Supp.2d at 885.  Plaintiff filed the action in federal court after waiting more than six months for the agency's final ruling on the administrative action, after Tennessee's statute of repose ran but before the deadline for filing under § 2401(b).  Id.  The court held that, "[a] claimant's claim is extinguished only if the claimant fails to meet the deadlines in §2401(b), and a state's statute of repose has no effect on the federal claim."  Id. at 892.  The time limitations of the FTCA were held to supplant state statutes of repose.  Id.

31

Defendant argues that the Middle District of Tennessee's holding in <u>Jones</u> should not persuade this Court, because the same court reached a different holding just two months later in <u>Huddleston v. U.S.</u>, No. 3-11-0223, 2011 WL 2489995 (M.D. Tenn. June 22, 2011).  The Sixth Circuit affirmed <u>Huddleston</u> on appeal.  <u>See</u> <u>Huddleston v. U.S.</u>, 485 F. App'x 744 (6th Cir. 2012).  As Plaintiff correctly points out, however, the district and circuit court opinions in <u>Huddleston</u> are unpublished, and unpublished opinions are not considered binding precedent in this Circuit.  11th Cir. R. 36-2.  The Middle District of Tennessee's opinion in <u>Jones</u> is published, and of greater precedential value.

The Court agrees with Plaintiff, and is persuaded by the courts' holdings in <u>Blau</u> and <u>Jones</u>.  Under either of the implied preemption categories, the time limitations of the FTCA preempt state statutes of repose.  The court in <u>Mamea v. United States</u>, No. 08—00563, 2011 WL 4371712 (D. Hawai'i Sept. 16, 2011), explained it best:

> A statute of repose extinguishes a claim after a certain period of time, even if the claim has not yet accrued.  Insofar as Congress expressly defined the statute of limitations for the FTCA in terms of accrual, applying state statutes of repose can effectively shorten the FTCA limitations period.  By defining the statute of limitations as two years after accrual, Congress chose to allow suits against the United States that might be barred in states with shorter limitations periods, whether by statute of limitation or statute of repose.

<u>Mamea</u>, 2011 WL 4371712, at *10.  The time limitations crafted by Congress in § 2401(b) persuade the Court that Congress intended to override state statutes of

limitation and repose.  Congress left no room for states to supplement the law with respect to the time constraints governing FTCA claims.

Further, Tennessee's statute of repose stands as an obstacle to the objective of the time limitations dictated in the FTCA.  In considering the FTCA's time limitations, the United States Supreme Court has stated:

> We should also have in mind that the [FTCA] waives the immunity of the United States and that in construing the statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended. *See Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957); *cf. Indian Towing Co. v. United States,* 350 U.S. 61, 68–69, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955). Neither, however, should we assume the authority to narrow the waiver that Congress intended. *Indian Towing Co. v. United States, supra.*

United States v. Kubrick, 444 U.S. 111, 117–18 (1979).  Applying Tennessee's three-year statute of repose to Plaintiff's FTCA claim would narrow the waiver Congress intended when it expressly laid out the time limitations for FTCA claimants.  As a result, applying Tennessee's statute of repose in this case would pose an obstacle to the time limitations in the FTCA, all of which with Plaintiff complied.

The Court holds that Tennessee's statute of repose is impliedly preempted by the FTCA; therefore, Plaintiff's Complaint is not subject to dismissal and this Court does not lack subject matter jurisdiction.  Plaintiff's tolling argument is therefore moot, and need not be addressed by the Court.

**IV.    CONCLUSION**

For the foregoing reasons, the Court denies Defendant's Motion to Dismiss (Doc. 5) and Motion to Dismiss Plaintiff's First Amended and Recast Complaint (Doc. 13).  Plaintiff's Motion for Extension of Time to File Good Faith Certificate (Doc. 12) is moot.

**SO ORDERED**, this the 6th day of October, 2015.

*/s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

les